IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA BILLUPS and JEFFREY REED, | ) ) ) | |
| Plaintiffs, | ) ) | No. 21 C 1018 |
| v. | ) ) | Judge Jorge Alonso |
| I.C. SYSTEM, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Angela Billups and Jeffrey Reed, have filed this suit against defendant I.C. System, Inc. ("ICS"), claiming that defendant's efforts to collect a debt violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. The case is before the Court on defendant's motion for summary judgment. For the following reasons, the motion is granted.

## BACKGROUND

The material facts of this case are straightforward and largely undisputed. Defendant ICS is a debt collector. On July 3, 2020, Comcast Cable Communications Management, LLC ("Comcast") placed an account in the name of Jeffrey Reed with ICS for collection. On February 5, 2021, Mr. Reed's wife, Angela Billups, spoke with ICS by telephone on Mr. Reed's behalf. Ms. Billups asked how ICS had obtained her huband's social security number, and ICS responded that it had received that information from Comcast. Ms. Billups and ICS spoke by phone again later that same day, this time joined by a Comcast representative. The Comcast representative stated that he could view the last four digits of a social security number associated with a Comcast account, but then he stated that, "on Comcast's end, there is no social security number registered to the relevant Comcast account" and again, "there is no social security number registered for this

account." (Def.'s LR 56.1 Resp. ¶¶ 7-9, ECF No. 42.) Ms. Billups disputed that Mr. Reed owed the debt, and immediately after concluding the phone call, ICS marked the account as disputed, meaning that any subsequent reporting would have reflected the dispute. (Pls.' LR 56.1 Resp. ¶¶ 14-15, ECF No. 40.) Plaintiffs admit that they produced no documents, obtained in discovery or otherwise, to show that ICS reported Mr. Reed's debt without marking the debt as disputed. (*Id.* ¶ 19.)

According to a sworn affidavit submitted by Robert McElroy, a Comcast manager (Def.'s Ex. A, ECF No. 34-1), Comcast received Mr. Reed's social security number, along with certain other information, from Equifax Information Services, LLC, and it transmitted this information, along with all other relevant information, when it referred Mr. Reed's account to ICS for collection. Mr. McElroy attests that the call center employee who spoke with Ms. Billups did not have all the information available to Comcast at his fingertips, and the information available to the employee did not include Mr. Reed's social security number, so the employee could not have known that Comcast had acquired the number. Nevertheless, according to Mr. McElroy, Comcast had indeed provided the social security number when it placed Mr. Reed's account with ICS.

A little more than two weeks after the February 5, 2021 phone conversation, plaintiffs initiated this lawsuit. During discovery, plaintiffs' counsel attempted to verify Mr. McElroy's version of events by serving a subpoena for records on Comcast, seeking records of (1) "subscriber information" for the Comcast account in question and (2) "any communication from Comcast to I.C. System" regarding that account. (Pls.' Ex. 8, ECF No. 39 at 21.) However, Comcast produced nothing, explaining, as to the "communication" request, that it had "no relevant records responsive to the Subpoena," and as to the "subscriber information" request, that Comcast was prohibited by law from disclosing personally identifiable subscriber information without express written consent

2

or a court order. (*Id.*) Plaintiffs never filed a motion to compel or otherwise followed up on this request.

Plaintiffs' complaint consists of two counts. Count One asserts that ICS violated the FDCPA, which prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation," 15 U.S.C. § 1692e, by misrepresenting to Ms. Billups that "Comcast had verified that a debt was associated with her husband's social security number." (Compl. ¶ 16.) Count Two asserts that ICS violated the FDCPA's prohibition on "[c]ommunicating . . . credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," 15 U.S.C. § 1692e(8), by "reporting Mr. Reed's debt to credit reporting agencies without noting that the debt was disputed." (Compl. ¶ 18.)

## DISCUSSION

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In assessing the evidence at summary judgment, the court must consider the facts in the light most favorable to the non-moving party, giving that party "the benefit of all conflicts in the evidence and reasonable inferences that may be drawn from the evidence," regardless of whether it can "vouch for the objective accuracy of all" the evidence the non-moving party puts forward. *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 674 (7th Cir. 2014). Even though district courts must view the non-moving party's evidence in this generous light, it does not follow that they are "required to draw every requested inference; they must only draw reasonable ones that are supported by the record."

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011). "Inferences supported only by speculation or conjecture will not suffice." *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018).

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (internal quotation marks omitted). "To defeat a motion for summary judgment, the party opposing it must make a 'showing sufficient to establish the existence of [any challenged] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Johnson*, 892 F.3d at 893-94 (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). The court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare*, 629 F.3d at 705; *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

The FDCPA "regulates interactions between consumer debtors and debt collectors," *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (internal quotation marks omitted), for the "purpose" of "protect[ing] consumers," *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 628 (7th Cir. 2009). Among numerous other protections, the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including "[c]ommunicating . . . credit information which is known or which should be known to

4

be false, including the failure to communicate that a disputed debt is disputed," *id.* § 1692e(8). Most provisions of the FDCPA apply not only to debtors but also to other persons whom a debt collector might target, such as a debtor's family members. *See Todd v. Collecto, Inc.*, 731 F.3d 734, 737-39 (7th Cir. 2013); *Koval v. Harris & Harris, Ltd.*, No. 16-CV-08449, 2017 WL 1321152, at *1-2 (N.D. Ill. Apr. 5, 2017); *see also Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 773 (7th Cir. 2007) ("[S]ections 1692d, e, or f . . . do not designate any class of persons . . . who can be abused, misled, etc., by debt collectors with impunity.").

**I.     Standing**

Before reaching the merits, the Court must consider an issue not originally raised by the parties: the threshold jurisdictional issue of standing. *United States v. $304,980.00 in U.S. Currency*, 732 F.3d 812, 817 (7th Cir. 2013) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004)) ("'[T]he federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines.'") (internal alteration marks omitted); *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) ("Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action."); *Calabrese v. Foxx*, 338 F. Supp. 3d 775, 783 (N.D. Ill. 2017) (citing *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002)) ("[S]tanding is a jurisdictional defect that the court must raise *sua sponte*.").

Article III of the United States Constitution limits the "judicial power" of federal courts to "cases" and "controversies." To "ma[k]e out a 'case or controversy' between himself and the

defendant within the meaning" of Article III, a plaintiff must show that he has "standing" to sue by "'alleg[ing] a personal stake in the outcome of the controversy.'" *Warth*, 422 U.S. at 499 (quoting *Baker v. Carr*, 390 U.S. 186, 204 (1962)). A plaintiff has standing to sue if he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To show injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S., 555, 560 (1992)); *see id.* at 342 (suggesting that, for example, "it is difficult to imagine how dissemination of an incorrect zip code, without more, could work any concrete harm," even if it happened to violate a statute that prohibited dissemination of inaccurate personal information).

In another FDCPA case, the Seventh Circuit recently explained the concreteness requirement as follows:

> A concrete injury is "real, and not abstract." *Spokeo*[, 578 U.S. at 340] (quotation marks omitted). Qualifying injuries are those with "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion* [*LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021)] (quoting *Spokeo*, 578 U.S. at 341). This standard includes "traditional tangible harms, such as physical harms and monetary harms," as well as "[v]arious intangible harms," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.*; *see also Spokeo*, 578 U.S. at 340-42.

*Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937-38 (7th Cir. 2022) (internal parallel citations omitted). Under this standard, where a debtor's credit score drops because a debt collector failed to notify the credit-reporting agency that the debtor has disputed his debt, the debtor has suffered the sort of harm that qualifies as a concrete injury. *See id.* (discussing *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1149 (7th Cir. 2022)). On the other hand, FDCPA violations that neither impose any "reputational injury," *Ewing*, 24 F.4th at 1154, nor induce the plaintiffs to pay debts

they would not otherwise have paid or take other such "specific act[s] to their detriment," typically do not cause any harm that qualifies as a "concrete" injury. *See Stallworth v. Terrill Outsourcing Grp., LLC*, No. 21 C 4332, 2022 WL 1773778, at *1-2 (N.D. Ill. June 1, 2022) (citing, *inter alia*, *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 339 (7th Cir. 2019), and *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066-67 (7th Cir. 2020)).

"[P]latiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]"). *TransUnion*, 141 S.Ct. at 2208. Further, they bear the burden of establishing standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. "To demonstrate standing at the summary judgment stage of litigation, the plaintiffs must 'set forth by affidavit or other evidence specific facts' demonstrating that they have suffered a concrete and particularized injury that is both fairly traceable to the challenged conduct and likely redressable by a judicial decision." *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 284 (7th Cir. 2020) (quoting (*Lujan*, 504 U.S. at 561)).

In keeping with its "oblig[ation] to police the constitutional limitations on [its] jurisdiction," *Bazile v. Fin. Sys. Of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (internal quotation marks and alteration omitted), this Court examined the summary judgment record for evidence of a concrete injury for which plaintiffs would have standing to sue. It found none. Plaintiffs appear to have abandoned Mr. Reed's claim,[1] and they adduced no evidence that defendant's alleged misrepresentation to Ms. Billups induced them to pay the Comcast debt or

---

[1] In their response brief, plaintiffs do not address Mr. Reed's claim at all other than to admit that, as defendant argues, they have not produced any documents to substantiate their allegation that defendant reported the Comcast debt without marking it as disputed. This (lack of) response amounts to abandonment of the claim. *See Little v. Mitsubishi Motors North Amer., Inc.*, 261 F. App'x. 901, 903 (7th Cir. 2008) (plaintiff who "failed to present facts or develop any legal arguments" as to certain claims in response to motion for summary judgment deemed to have abandoned them).

take or omit any other actions that detrimentally affected their finances or their credit. Nor, needless to say, is this the type of violation that causes reputational injury by itself, as the misrepresentation was made not publicly but only to Ms. Billups. In their complaint, plaintiffs alleged that defendant's misrepresentation to Ms. Billups caused her an actual injury because it "caused her to interrupt her work time to contact Comcast" (Compl. ¶ 14), but plaintiff adduced no evidence of any specific harm caused by any "interrupt[ion of] her work time," and the Seventh Circuit has explained that merely having to make a phone call to dispute a debt is not a "legally cognizable harm[]." *Pierre*, 29 F.4th at 939 ("Making a call to a debt collector is not closely related to an injury that our legal tradition recognizes as providing a basis for a lawsuit."). Therefore, the Court directed the parties to file supplemental briefs addressing the issue.

In plaintiffs' supplemental brief, Mr. Reed disclaims any "conten[tion] that he has standing." (Pl.'s Supp'l Br. at 3, ECF No. 45.) As for Ms. Billups, for the first time plaintiffs adduce evidence, in the form of excerpts of Ms. Billups's deposition transcript, that she was harmed by having to interrupt her work time and she suffered physical symptoms from the distress this ordeal caused her. At her deposition, Ms. Billups testified that her side business as a tax preparer suffered because, while she was on the phone with Comcast and defendant, she was unable to take calls from potential clients, who instead sought tax services elsewhere. (Pls.' Supp'l Br., Ex. 1, ECF No. 45-1).) Additionally, Ms. Billups testified that she suffered headaches and loss of sleep from the ordeal of having to sort this matter out via lengthy, difficult phone contact with Comcast and defendant. (*Id.*, Exs. 2-3, ECF Nos. 45-2, 45-3.)

The Court is troubled by this response. The Case Procedures posted on the undersigned judge's website require parties submitting deposition testimony in opposition to a summary judgment motion to file with their briefs the *entire* transcripts of the relevant depositions. Had

8

plaintiffs complied with this requirement, it would have saved the Court and the parties the time and trouble of the supplemental briefing. Plaintiffs and their counsel are admonished to review and comply with the Court's Case Procedures in any further litigation before this Court.

Nevertheless, the Court agrees with plaintiffs that this newly submitted evidence suffices to demonstrate concrete injuries that satisfy Article III standing requirements. While the loss of time is not necessarily a concrete injury by itself, "time and money spent resolving fraudulent charges are cognizable injuries for Article III standing," *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016), and it would seem to follow that time spent resolving a deceptive attempt to collect a debt, resulting in a loss of income because the time would otherwise have been spent in self-employed business activity, is a cognizable injury for purposes of Article III standing. *See Brown v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 21 C 1120, 2021 WL 3910748, at *2 (N.D. Ill. Sept. 1, 2021); *see also Gilbert v. TrueAccord Corp.*, No. 21-CV-485, 2022 WL 2257126, at *5 (N.D. Ill. June 23, 2022) ("an injury need not be 'large;' a mere 'trifle' will do" (quoting *Sierra Club v. Franklin Cty. Power of Ill., LLC*, 546 F.3d 918, 925 (7th Cir. 2008))). Additionally, this Court has recognized that distress so powerful as to cause "[p]hysical manifestations" may rise to the level of a concrete injury, even if those physical manifestations are relatively slight. *See Gilbert*, 2022 WL 2257126, at *5 (plaintiff had standing when debt collection activity made her so angry that she was shaking) (citing *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021)). Although borderline, plaintiff's allegations of headaches and loss of sleep are in the same vein of injury. *See Kinnick v. Med-1 Sols., LLC*, No. 119CV02563TABSEB, 2021 WL 2291153, at *5 (S.D. Ind. June 4, 2021) (plaintiff's loss of sleep sufficed to confer standing). Thus, the Court considers Ms. Billups to have (barely) carried her burden to demonstrate standing, and it proceeds to the merits.

II.    **Merits**

Defendant contends that it is entitled to summary judgment because plaintiffs have not come forward with sufficient evidence to permit a jury to return a verdict in their favor; instead, they argue, the undisputed facts show that plaintiffs' claims are unfounded. Defendant is correct. First, as the Court has already mentioned, plaintiffs have abandoned Mr. Reed's claim, conceding on both standing and the merits. As for Ms. Billups's claim, plaintiffs have not adduced admissible evidence that would suffice to permit a reasonable jury to render a verdict in Ms. Billups's favor.

At the summary judgment stage, evidence need not be in a form admissible at trial, but it must be admissible in substance. *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). "If the evidence is inadmissible hearsay, the courts may not consider it." *Id.* (citing *Carlisle v. Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009)). The basis for Ms. Billups's claim that, contrary to defendant's representation to her, Comcast had not actually associated Mr. Reed's social security number with the delinquent account is Ms. Billups's representation[2] of the Comcast representative's statement during the three-way phone call on February 5, 2021. This representation is pure hearsay, and Ms. Billups has not identified a Comcast representative she can testify to call to the witness stand to cure the hearsay defect at trial.

That leaves plaintiffs with no evidence other than the fact that Comcast was unable to produce any social security number in response to plaintiffs' counsel's subpoena. Plaintiffs argue that, based on this fact, a reasonable juror could conclude that defendant lied about connecting the Comcast debt to Mr. Reed via his social security number. Although Mr. McElroy avers that,

---

[2] Defendant also objects to plaintiffs offering Ms. Billups's testimony in the form of an unsworn affidavit. The Court doubts whether this objection has merit, *see Owens v. Hinsley*, 635 F.3d 950, 954 (7th Cir. 2011), but it makes no difference because, even accepting the affidavit, plaintiffs' evidence is still insufficient to survive summary judgment.

unbeknownst to the Comcast representative who happened to speak with Ms. Billups, Comcast did indeed have Mr. Reed's social security number, plaintiffs argue that the fact that Comcast could not or would not independently confirm in discovery that Mr. Reed's social security number was associated with the account demonstrates that there is a genuine material factual dispute over the issue.

But plaintiffs' argument ignores Comcast's express reasons for producing nothing, which were that, (a) regarding plaintiff's request for relevant communications from Comcast to ICS, it had "no relevant records responsive to the Subpoena," and, (b) regarding plaintiff's request for personally identifiable subscriber information, Comcast was prohibited by law from disclosing it without the subscriber's express written consent or a court order. (Pls.' Ex 8, ECF No. 39 at 21.) Plaintiffs admit that they did not file a motion to compel, and they do not explain why they neither sought a court order requiring Comcast to disclose the information in its possession nor provided Mr. Reed's express written consent to the disclosure of the information without a court order.

Under these circumstances, no reasonable juror could infer that Comcast did not have Mr. Reed's social security number based only on Comcast's failure to provide the number in response to plaintiffs' subpoena. Comcast's response expressly stated that Comcast needed express written consent or a court order to provide the information plaintiffs sought. But instead of following up by providing express written consent or a court order, plaintiffs let the matter drop. To conclude that Comcast did not have the social security number under these circumstances would be to engage in speculation by drawing an inference in plaintiffs' favor based on an evidentiary deficit of plaintiffs' own making. Without more evidentiary support, the inference that plaintiffs ask the Court to make is "not reasonably supported by the record," so the Court "need not accept it." *Overly v. KeyBank Nat. Ass'n*, 662 F.3d 856, 863 (7th Cir. 2011) (mere speculation that defendant

11

took improper action was insufficient to overcome defendant's reasonable explanation supported by evidence at summary judgment) (citing *Omnicare*, 629 F.3d at 704); *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1042-43 (E.D. Wis. 2018) (rejecting non-movant's argument that there were material questions of fact because it "rest[ed] on speculation about potential holes in the evidence, born of [the non-movant's] failure to take discovery in order to mount an evidence-based challenge") (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) ("It is well-settled that speculation may not be used to manufacture a genuine issue of fact.")); *see Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (plaintiffs cannot survive summary judgment when "all [they] have to go on is a collective hunch").

Summary judgment is the "put up or shut up" moment in a lawsuit, and plaintiffs have not put up sufficient evidence to permit a reasonable jury to return a verdict in their favor.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [33] is granted. Civil case terminated.

**SO ORDERED.**                                                    **ENTERED: August 25, 2022**

 

**HON. JORGE ALONSO**
**United States District Judge**